The record shows in this case that Hall had recovered a judgment against John King and others, upon which a fi. fa. issued, and M'Minn was summoned by the sheriff as a garnishee to appear in the Circuit Court at the return of the writ, and disclose what sum he owed King, that Hall might obtain judgment against him for the amount. M'Minn attended and was sworn; he stated that he owed fifteen hundred acres of land warrant, and eight hundred and odd dollars payable in whiskey; but whether the time of payment had arrived or not, does not satisfactorily appear. The bond which he gave King is set out, as well as an assignment upon it, to one Underwood; the assignment is dated 25th February, 1814. The garnishee was summoned in March and sworn in September of the same year; he stated that, in August, he received notice of the assignment, and was threatened with suit by the assignee. The Circuit Court, upon this disclosure, gave judgment against the garnishee, from which he appealed to this court; and now, it is said, this judgment is erroneous on two accounts: first, because M'Minn's debt was to be paid in property; second, because this bond was assigned to Underwood, who is entitled to the money or property due upon it.
In examining the case, insuperable objections are discovered to this course of proceeding; when you summon as garnishee a man whose contract is to pay property, what judgment can be given against him? It would be manifestly unjust to make him pay money when his creditor would be bound to receive property. How can any process be used by a court of law to compel him to pay property? In this case, could we give judgment that he shall pay a land warrant of 1500 acres and eight hundred dollars worth of whiskey? Would any reasonable man say he should produce whiskey and let the sheriff sell until the money was made? This would be most unjust; it might not sell for a tenth part of the price, per gallon, that would be considered reasonable between him and his creditor; no provision is made in the law by which these difficulties can be avoided; and, upon examining the acts, we believe the legislature only intended to call upon third persons in this manner, when they were bound to pay money, and the time for payment had elapsed. It surely never intended to ruin one man to enable another, with whom *Page 329 
he had no contract, to collect his debt, which would in many cases be the effect of a different construction.
On the other point, it is very doubtful what ought to be done; if Underwood, for a valuable consideration, purchased and obtained an assignment of this bond before M'Minn was summoned, and M'Minn knew of this before he was sworn, ought any court, with this knowledge, to give a judgment against M'Minn as if this was King's debt, without at the same time securing M'Minn against Underwood? This it could not do, as Underwood is no party, and his claim could not be prejudiced by any thing done in this suit. It would seem very hard that an innocent man should be entangled with other men's difficulties. If there is any contrivance between King and others to defeat the collection of Hall's money, the matter can no doubt be reached, but not in this way. We believe the judgment must be reversed, and the garnishee discharged.